CLERK US DISTRICT COURT
NORTHERN DIST. OF TX.
FILED

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS** 2017 FEB 23 PM 3: 41
**FORT WORTH DIVISION**

DEPUTY CLERK _____

| | | |
|---|---|---|
| **JOURNEY L. YAWS, on behalf of** | § | |
| **B.D.H.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 4:15-CV-0961-Y-BL** |
| | § | |
| **NANCY A. BERRYHILL,[1]** | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U. S. C. §§ 405(g), 1383(c)(3), Plaintiff seeks judicial review of a decision

of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental

Security Income ("SSI") on behalf of her son under Title XVI of the Social Security Act. *See*

Compl. (doc. 1). The Commissioner has filed an answer, *see* Answer (doc. 10), and a certified copy

of the transcript of the administrative proceedings, *see* SSA Admin. R. [hereinafter "R."] (docs. 12-

13), including the hearing before the Administrative Law Judge ("ALJ"). The parties have briefed

the issues. *See* Pl.'s Appeal (doc. 15); Appellee's Br. (doc. 16); Pl.'s Reply (doc. 17). The United

States District Judge referred the case to the undersigned pursuant to 28 U.S.C. § 636(b). After con-

sidering the pleadings, briefs, and administrative record, the undersigned recommends that the Com-

missioner's decision be reversed and remanded for further consideration.

## I.    BACKGROUND

Plaintiff has filed two applications for SSI benefits on behalf of her son who was born on

---

[1]On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as the Acting Commissioner of Social
Security. In accordance with Fed. R. Civ. P. 25(d), the Court automatically substitutes her as the named defendant.

March 15, 2011. *See* R. 144, 165, 213. She protectively filed an application in April 2011 alleging disability beginning at his birth. R. 165. In March 2012, she filed a second application alleging disability beginning March 29, 2011. R. 144 (showing filing date as March 15, 2012), 213 (showing protective filing date as March 9, 2012). In the first application, Plaintiff claims that her son is disabled due to Hunter syndrome. R. 168. In the second application, she claims that he is disabled due to that syndrome, mild deafness, and enzyme replacement. R. 217. The Commissioner denied both applications initially (May 24, 2011, and November 6, 2012) and on reconsideration (October 3, 2011, and March 4, 2013). R. 61-64.

On March 12, 2014, Administrative Law Judge ("ALJ") Peri Collins held a hearing on the 2012 application. *See* R. 31-60. Counsel informed the ALJ that Hunter syndrome was listed as a compassionate allowance. R. 32. On July 25, 2014, the ALJ issued an unfavorable decision finding that Claimant was not disabled because he did not have an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of any listed impairment. R. 12-23. The ALJ identified March 15, 2012, as the protective filing date for the SSI application under consideration. R. 12. Applying the sequential, three-step analysis for child claimants set out in 20 C.F.R. § 416.924 the ALJ first determined that Claimant had not engaged in substantial gainful activity since the date of his SSI application. R. 15. The ALJ next determined that Claimant had two severe impairments: (1) mucopolysaccharidosis II ("MPS II"), also known as Hunter syndrome, and (2) sleep apnea. *Id.* Third, the ALJ found that Claimant did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of any impairment in the listings.[2] R. 16-23. At Step 3 of the evaluative sequence, the ALJ thus found that Claim-

---

[2]For SSI claimants, § 416.925 explains the general purpose and use of the listings of impairments.

2

ant was not disabled within the meaning of the Social Security Act since the date of his 2012 SSI application. R. 23.

The Appeals Council denied review on October 26, 2015. *See* R. 1. The ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

Claimant commenced this social security appeal on December 18, 2015. *See* Compl. He purports to present a single issue for review – whether substantial evidence supports the denial of his claim for SSI benefits, but he also questions whether the Commissioner properly evaluated his impairments under applicable regulations and policy statements. *See* Pl.'s Appeal at 1. As part of his issues, Claimant asserts that the Commissioner failed to follow a policy that a child's impairments meet the requirements of a listed impairment through compassionate allowance provisions. *Id.* at 7-12. In addition, he claims that his initial SSI application should be reopened and revised because he filed his second application within twelve months of being notified of the determination on the initial application. *Id.* at 12.

## II.    LEGAL STANDARD

The Social Security Act provides a specific definition of disability for individuals under the age of eighteen. *See* 42 U.S.C. § 1382c(a)(3)(C). Such an individual who is not engaging in substantial gainful activity is disabled within the meaning of the Act, "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* To evaluate a child disability claim, the Com-

3

missioner employs the previously mentioned three-step inquiry: (1) whether the child is engaged in substantial gainful activity; (2) whether the child has a severe impairment; and (3) whether the child has an impairment or combination of impairments that satisfies the duration requirement and meets, medically equals, or functionally equals a listed impairment. 20 C.F.R. § 416.924(a)-(d) (effective July 15, 2011).

The regulations provide relevant guidance as to determining whether an impairment meets (§ 416.925), medically equals (§ 416.926), or functionally equals (§ 416.926a) a listing. *See id.* § 416.924(e). Part B of the listings apply only to children. *See id.* § 416.925(b)(2)(i) (effective June 7, 2011). Although each listing may express its severity criteria in its own way, "in general, a child's impairment(s) is of 'listing-level severity' if it causes marked limitations in two domains of functioning or an extreme limitation in one." *See id.* § 416.925(b)(2)(ii). Nevertheless, when the Commissioner decides whether an impairment

> meets the requirements of a listing, [she] will decide that [an] impairment is of "listing-level severity" even if it does not result in marked limitations in two domains of functioning, or an extreme limitation in one, if the listing that [applies] does not require such limitations to establish that an impairment(s) is disabling.

*See id.* Each listing specifies "objective medical and other findings needed to satisfy the criteria of that listing" and the Commissioner "will find" that an impairment "meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." *Id.* § 416.925(c)(3). A diagnosis alone does not meet a listing. *Id.* § 416.925(d).

The Commissioner considers whether an impairment medically equals a listed impairment when the claimant has a listed impairment, but does not exhibit all specified findings for that listing

4

or not all of the findings are "as severe as specified in the particular listing." *Id.* § 416.926(b)(1) (effective June 13, 2011). In those circumstances, the Commissioner finds the impairment medically equivalent to the listing if the claimant has "other findings related to [his or her] impairment that are at least of equal medical significance to the required criteria." *Id.* § 416.926(b)(2).

The Commissioner considers functional equivalence when the child claimant has "a severe impairment or combination of impairments that does not meet or medically equal any listing." *See id.* § 416.926a(a).[3] Functional equivalence means that the impairment is "of listing-level severity, i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* The domains are (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id.* 416.926a(b)(1)(i)-(vi). Because evaluating functional equivalence requires adjudicators to compare how a claimant's functioning compares to children of the same age who are not impaired, the claimant's age is an important factor in the analysis. *Rose ex rel. A.D.W. v. Colvin*, No. 3:15-CV--2187-BN, 2016 WL 3031853, at *3 (N.D. Tex. May 26, 2016).

Claimants have the burden to show they are disabled. *Id.* at *2. At Step 3 of the evaluative sequence, this burden includes "establishing that his impairment meets or equals the criteria for presumptive disability described in the listings." *Whitehead v. Colvin*, 820 F.3d 776, 781 (5th Cir. 2016) (adult disability case). If the claimant does not carry that burden, he can still carry his burden

---

[3]Since Claimant's initial application in April 2011, § 416.926a has existed in four versions: (1) effective October 7, 2016; (2) effective June 12, 2015, through October 6, 2016; (3) effective June 13, 2011, through June 11, 2015; and (4) effective December 18, 2007, through June 12, 2011. The quoted language is the same for all four versions. Furthermore, unless noted otherwise in a given citation, all four versions are materially the same.

by showing that his impairment functionally equals a listing.

"Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015) (quoting *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)).

Although child disability cases invoke their own definition of disability and inquiry for determining disability, such cases do not change the scope of judicial review or the meaning of substantial evidence. *See Richard ex rel. Z.N.F. v. Astrue*, 480 F. App'x. 773, 778 (5th Cir. 2012) (per curiam) (applying same scope of review and definition of substantial evidence as adult disability cases); *Swist ex rel. Green v. Barnhart*, 177 F. App'x 414, 416 (5th Cir. 2006) (per curiam) (same). "In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The courts neither "try the questions *de novo*" nor substitute their "judgment for the Commissioner's, even if [they] believe the evidence weighs against the Commissioner's decision." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). The Commissioner resolves conflicts of evidence. *Sun*, 793 F.3d at 508.

## III.   ANALYSIS

This appeal questions whether substantial evidence supports the Commissioner's denial of SSI benefits and whether the Commissioner applied proper legal standards. *See* Pl.'s Appeal at 1.

As part of those issues, Claimant argues that the Commissioner failed to follow a policy regarding compassionate allowance and that such failure prejudiced him. *Id.* at 7-12. Claimant also claims that the Court should reopen his initial SSI application. *See id.* at 12.

## A. Request to Reopen

Upon a claimant's request or upon the Commissioner's own initiative, the Commissioner may reopen a determination or decision. *See* 20 C.F.R. § 416.1487. "Within 12 months of the date of the notice of the initial determination," a decision or determination may be reopened "for any reason." *See id.* § 416.1488.

Nothing indicates that Claimant sought to reopen his initial application at the administrative level. He merely infers entitlement to reopening because his mother filed his initial application in April 2011; the Commissioner initially denied it on May 26, 2011; and he filed his second application within one year of that denial. Pl.'s Appeal at 12. The ALJ, however, rendered her decision only on the second application. *See* R. 12. Neither the ALJ nor the Appeals Council reopened the first application. To the extent the Commissioner has refused to reopen the initial application, the Court lacks jurisdiction to address the decision not to reopen. *See Yates v. Colvin*, 606 F. App'x 225, 228 (5th Cir. 2015) (per curiam). On the other hand, to the extent the Commissioner has simply not considered reopening the first application because Claimant has not made a request through the administrative channels, there appears to be nothing for the Court to review regarding reopening the first application.

For these reasons, the Court should take no action on the request to reopen the first SSI application. Of course, should the Court remand this case for further consideration as recommended, nothing in this recommendation prevents him from requesting the reopening of the first application.

## B. Compassionate Allowances

Claimant argues that the Commissioner failed to follow a compassionate allowance policy

and that such failure prejudiced him. Pl.'s Appeal at 7-12. The official SSA web site (www.ssa.gov)

provides the following pertinent information:

> Compassionate Allowances (CAL) are a way of quickly identifying diseases and
> other medical conditions that invariably qualify under the Listing of Impairments
> based on minimal objective medical information. Compassionate Allowances allow
> Social Security to target the most obviously disabled individuals for allowances
> based on objective medical information that we can obtain quickly. Compassionate
> Allowances is not a separate program from the Social Security Disability Insurance
> or Supplemental Security Income programs.

Social Security, https://www.ssa.gov/compassionateallowances/ (last visited Feb. 22, 2017). Effect-

ive January 9, 2017,[4] Program Operations Manual System (POMS) DI 11005.604 governs "Proces-

sing Compassionate Allowances (CAL) in the Field Office (FO)" and states: "The CAL initiative

is designed to quickly identify diseases and other medical conditions that invariably qualify under

the Listing of Impairments based on minimal, but sufficient, objective medical information. If the

condition does not meet these strict criteria, it is not designated as a CAL case." Social Security,

https://secure.ssa.gov/apps10/poms.nsf/lnx/0411005604 (last visited Feb. 22, 2017). The list of con-

ditions that qualify for compassionate allowances includes "MPS II, formerly known as Hunter Syn-

drome." Social Security, https://www.ssa.gov/compassionateallowances/conditions.htm (last visited

Feb. 22, 2017); *accord* R. 293 (showing MPS II as a listed condition).

The link for Hunter syndrome leads to Program Operations Manual System (POMS) DI

23022.410. Social Security, https://secure.ssa.gov/apps10/poms.nsf/lnx/0423022410 (last visited

---

[4]The parties cite to an unspecified earlier POMS DI 11005.604, but there is no reason to believe that the current
version differs materially from the cited version.

Feb. 22, 2017); *accord* R. 273-74 (including relevant POMS in administrative record).  According

to POMS DI 23022.410, which became effective August 28, 2013:

> Hunter syndrome is a rare, inherited disease in which the sugar molecules (mucopoly-
> saccharides) are not broken down correctly and build up in the body.  The condition
> is caused by a lack of enzyme iduronate sulfatase.  The early-onset (severe) form of
> Hunter syndrome begins shortly after age 2.  The symptoms include: aggressive beha-
> vior, hyperactivity, mental function decline, severe intellectual disability and spasti-
> city.  Other symptoms may include:  carpal tunnel syndrome, coarse facial features,
> deafness, hairy body (hypertrichosis), joint stiffness and a large head (macrocephaly).
> Individuals with this disorder may experience the following signs:  abnormal retina,
> heart murmur and leaky heart valves, enlarged liver (hepatomegaly) enlarged spleen
> (splenomegaly), inguinal hernia, and joint contractures.

R. 273.

This POMS sets out two alternative "suggested programmatic assessment[s]," but provides

adjudicators discretion as to which to use.  R. 274.  More specifically, it states: "Adjudicators may,

at their discretion, use the Medical Evidence of Record or Listings suggested to evaluate the claim.

However, the decision to allow or deny the claim rests with the adjudicator." *Id.*  It suggests the fol-

lowing medical evidence of record ("MER") for evaluation: "Enzyme assay for iduronate sulfatase;

evidence of progressive neuro-developmental delay; physical examination of the eyes, heart, liver,

spleen, respiratory, neurologic and musculoskeletal systems." *Id.*  It also suggests a listing (110.08B)

for evaluation that a claimant may meet. *Id.*  Adjudicators appropriately evaluate the disorder under

110.08B because "[t]his congenital disorder interferes with mental development and has progressive

loss of motor function." *Id.*

In this case, the Field Office did not identify this as a CAL case. *See* R. 165-66 (2011 appli-

cation); 213-15 (2012 application).  This is hardly surprising because the Commissioner did not add

Hunter syndrome as a Compassionate Allowance until August 28, 2013.  Nevertheless, at the admin-

istrative level, Claimant submitted information about Compassionate Allowances from the Social

Security Administration (R. 286-98), POMS DI 23022.410 for Hunter syndrome from the Social

Security Administration (R. 273-74), and information about the disorder from the Mayo Clinic (R.

276-85). Claimant's attorney also discussed CAL with the ALJ at the hearing and the ALJ indicated

that, even for a CAL impairment, the claimant must satisfy a listing to warrant a finding of disability.

*See* R. 32-42. The ALJ's written decision does not mention CAL. R. 12-23.

Relying on POMS DI 23022.410, Claimant states that Hunter syndrome "is deemed to meet

the requirements of Section 110.08B."[5] Pl.'s Appeal at 10. Claimant next infers error by the failure

of the ALJ to refer to CAL in the decision. *Id.* He suggests that the existence of the impairment is

of itself sufficient for a finding of disability. *Id.* at 11. He argues that conditions listed as compas-

sionate allowances "do not require a particular set of criteria to establish listing severity" because

they "invariably qualify under the listing of impairments based on minimal objective medical infor-

mation." *Id.* He next argues that the Commissioner has specified no particular requirements with

regard to the developmental domains in order to establish eligibility based on Hunter syndrome and

further argues that the ALJ erred in insisting on certain functional loss in particular domains because

that insistence is not supported by the Commissioner's policy on Hunter syndrome. *Id.* Finally, he

argues that the errors of the ALJ have prejudiced him because had the ALJ found that his condition

was listed as a compassionate allowance, "a finding of disability would have been required" and that,

based upon the ALJ finding the Hunter syndrome to be a severe impairment at Step 2, "the ALJ

should have found that the condition is a Compassionate Allowance condition, issued a finding in

favor of the Plaintiff and ordered payment of benefits." *Id.* at 11-12.

---

[5] "Section" is an apt substitute for "Listing" and this recommendation will use the terms interchangeably.

The Social Security Administration has provided little guidance regarding CAL and judicial review of cases involving CAL is rare. Consequently, counsel advocates for Claimant with limited to no support for his positions. However, zealous advocacy based on existing limited guidance should not persuade the Court that CAL dramatically changes the process for determining whether a child is disabled or the judicial review flowing from an adverse decision in a child disability case. While the ALJ's decision reflects no suggestion that the ALJ provided any special consideration to Claimant's Hunter syndrome, CAL does not require a finding of disability merely because the ALJ has found a severe impairment that is listed as a compassionate allowance. CAL does not supplant the three-step analysis of the social security regulations; it instead provides a means to expedite consideration of CAL impairments. The Court should reject outright any suggestion or argument that a Step 2 severity finding for a Compassionate Allowance is sufficient to find a claimant disabled. Accepting such proposition would unduly alter the three-step analysis required for child claimants and is not warranted by any regulation, statute, or policy of the Commissioner.

Claimant misinterprets CAL based on limited information. He focuses too intently on the word "invariably" instead of the surrounding words that modify it. As reflected on its official web site, the Social Security Administration modifies "invariably" with "based on minimal objective medical information." Social Security, https://www.ssa.gov/compassionateallowances/ (last visited Feb. 22, 2017). POMS DI 11005.604, which addresses the process at the Field Office level, similarly modifies "invariably" with "based on minimal, but sufficient, objective medical information" and further states that "[i]f the condition does not meet these strict criteria, it is not designated as a CAL case." Social Security, https://secure.ssa.gov/apps10/poms.nsf/lnx/0411005604 (last visited Feb. 22, 2017). While the CAL information does not itself state what minimal objective medical

information is sufficient, some information is certainly required before an impairment invariably satisfies a listing. Moreover, the listings themselves are tailored to identify what is necessary to satisfy them.

POMS DI 23022.410 explains Hunter syndrome and provides guidance as to how to assess the disorder. *See* R. 273-74. It does not, however, deem the requirements of Listing 110.08B as being met. It identifies that listing as an alternative for evaluating a claim of disability while also setting out medical evidence of record ("MER") that adjudicators may evaluate. While Hunter syndrome may meet that listing depending on the medical record of a particular claimant, the three-step process requires analysis of Step 3 and the relevant listing after the Commissioner determines that a claimant has a severe impairment at Step 2. Every claimant with Hunter syndrome does not necessarily meet the listing.

Social security regulations set out the process for ALJs to follow in determining whether a chid claimant is disabled. CAL provides a means to expedite a case but does not alter the manner in which adjudicators decide disability. In this case, Claimant has an impairment listed as a Compassionate Allowance. Consistent with the guidance provided by the Social Security Administration, the ALJ applied Listing 110.08B when reviewing that impairment. The Court should find no failure to follow a compassionate allowance policy.

Furthermore, to the extent an ALJ errs in failing to identify a case as a CAL case, such failure does not warrant reversal absent prejudice to the claimant. *Webb ex rel. Z.D. v. Colvin*, No. 3:12-CV-1059-O, 2013 WL 5020495, at *21 (N.D. Tex. Sept. 13, 2013) (accepting recommendation of Mag. J.). To warrant reversal, the failure to identify the case as a CAL case must, of itself, cast doubt on the existence of substantial evidence to support the ALJ's decision, but such failure has no

12

effect on a given case because the ALJ retains "the discretion to approve or deny [the] claim based on the medical evidence of record and the suggested listings." *Id.* Similarly, even if the Commissioner errs in failing "to afford a compassionate allowance," such error does not warrant reversal because "[t]he fact that a condition qualifies for a compassionate allowance does not require a finding of disability." *Robinson v. Colvin*, No. 15-60502-CIV, 2016 WL 4801346, at *3 (S.D. Fla. Jan. 5, 2016). With respect to the CAL issue, the Court should find no prejudicial error.

Claimant would distinguish *Webb* on grounds that, unlike the ALJ in that case, the ALJ here "did not reject the claim that the case should be processed as a compassionate allowance case," but instead simply "never considered the criteria for compassionate allowance cases." Pl.'s Reply at 4-5. The distinction, however, lacks significance. Whether the ALJ specifically declines to process the case under CAL or whether the ALJ simply does not state perceived special criteria for such cases makes no material difference to the ultimate disability decision. On judicial review, the federal courts must determine whether the Commissioner applied the proper legal standards and whether substantial evidence supports the decision. The Court should thus proceed to considering whether the ALJ in this case applied the proper legal standard at Step 3 of the evaluative process and whether substantial evidence supports the decision to deny SSI benefits.

## C.  Step 3

In this case, the ALJ considered whether Claimant's severe impairments (Hunter syndrome and sleep apnea) met or medically equaled required criteria under § 110.00 (Congenital Disorders that Affect Multiple Body Systems) and more specifically, § 110.08B, which "requires very serious interference with development or functioning." R. 16. In finding that Claimant did not have an impairment or combination of impairments that met or medically equaled § 110.00 or § 110.08B, the

13

ALJ noted that the evidence of record was inconsistent with a listing-level severity and that "early medical intervention with genetic testing as a one week old and enzyme replacement therapy starting at 2 months of age" had delayed "the more severe symptoms typical of this condition." *Id.*

Having found no met or medically equaled listing, the ALJ considered whether Claimant has an impairment or combination of impairments that functionally equaled a listed impairment. R. 16-23. After considering testimony from Claimant's mother and other evidence of record, the ALJ found no evidence of two marked or one extreme functional limitation. R. 17-18. In determining whether Claimant had an impairment that functionally equals Listing 110.08B, the ALJ found that Claimant had no limitation in (1) acquiring and using information, (2) attending to and completing tasks, (3) interacting and relating to others, and (4) moving about and manipulating objects. R. 18-21. The ALJ further found Claimant markedly limited in his ability to care for himself based upon an indwelling catheter and required weekly enzyme replacement therapy, but found him less than markedly limited in health and physical well-being. R. 21-23. She noted that, although Claimant had had some delayed language functioning, the issues were mostly resolved through speech therapy. R. 18. She also noted that Claimant's treating geneticist, Alice Basinger, M.D., had found that Claimant had extreme limits in interacting with others due to "no speech," but the ALJ found the assessment inaccurate and inconsistent with the record. *Id.*

The Social Security Administration uses Listing 110.08B when evaluating a "catastrophic congenital disorder (see 110.00D and 110.00E) with . . . [v]ery serious interference with development or functioning." 20 C.F.R. § 110.08B Pt. 404, Subpt. P, App. 1 (effective Jan. 17, 2017).[6] To

---

[6]The listings of impairments have undergone frequent revisions but the cited portions of Listings 110.00 and 110.08 have not changed since the ALJ rendered her decision in July 2014.

"determine" whether a disorder "meets 110.08A or B," the Commissioner needs one of the following:

> 1. A laboratory report of the definitive test that documents your disorder (for example, genetic analysis or evidence of biochemical abnormalities) signed by a physician.

> 2. A laboratory report of the definitive test that documents your disorder that is not signed by a physician and a report from a physician stating that you have the disorder.

> 3. A report from a physician stating that you have the disorder with the typical clinical features of the disorder and that you had definitive testing that documented your disorder. In this case, we will find that your disorder meets 110.08A or B unless we have evidence that indicates that you do not have the disorder.

> 4. If we do not have the definitive laboratory evidence we need under E1, E2, or E3, we will find that your disorder meets 110.08A or B if we have: (i) a report from a physician stating that you have the disorder and that you have the typical clinical features of the disorder, and (ii) other evidence that supports the diagnosis. This evidence may include medical or nonmedical information about your development and functioning.

> 5. For obvious catastrophic congenital anomalies that are expected to result in early death, such as anencephaly and cyclopia, we need evidence from a physician that demonstrates that the infant has the characteristic physical features of the disorder. In these rare cases, we do not need laboratory testing or any other evidence that confirms the disorder.

*Id.* § 110.00E.

As used in Listing 110.08B, "very serious" is defined the same "as in the term 'extreme' in [20 C.F.R.] § 416.926a(e)(3)." *Id.* § 110.00D. Despite recent amendments, § 416.926a(e), which defines "marked" and "extreme" limitations, has remained unchanged since December 2007. *Compare* 20 C.F.R. § 416.926a(e) (effective Oct. 7, 2016) *with* 20 C.F.R. § 416.926a(e) (in effect Dec. 18, 2007, through June 12, 2011).

The ALJ appropriately identified § 110.08B as the relevant listing for evaluating Claimant's Hunter syndrome. POMS DI 23022.410 specifically states that § 110.08B is the relevant listing.

While the ALJ mentioned § 110.00 generally and § 110.08B specifically, she does not mention § 110.00E even though § 110.08 references it. Section 110.00E appears critical in assessing whether Claimant's disorder meets § 110.08B. Because the ALJ in this case fails to explain how she concludes that Claimant's disorder does not meet § 110.08B through § 110.00E, she fails to provide this reviewing court sufficient information to determine whether the decision is based on substantial evidence. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The failure of the ALJ does not require remand, however, unless the Court finds prejudice. *See id.* Under the facts of this case, the error of the ALJ is not harmless. Claimant's treating geneticist, Alice Basinger, M.D., evaluated Claimant for Hunter syndrome on March 22, 2011. R. 330. Even though Claimant was asymptomatic at that time, Dr. Basinger noted that he was "at risk for Hunter Syndrome" due to "maternal family history." *Id.* Dr. Basinger referred Claimant for enzyme testing. *Id.* On March 28, 2011, Laura Pollard, Ph. D., FACMG,[7] issued a signed lab report stating that based upon lab testing, Claimant had deficient ""Iduronate-2-sulfatase activity . . . which is consistent with a diagnosis of Hunter syndrome (MPS II)." R. 333.

On April 1, 2011, Dr. Basinger met with Claimant's family for counseling regarding Hunter syndrome. R. 534, 1014-15. Dr. Basinger recognized the family history of the disorder, "subtle physical clues noted by the family," and the laboratory results "indicating Hunter syndrome." R. 1015. Based on the information before the doctor, she found that no further work up was needed to diagnose the syndrome. *Id.* In addition, via letter dated April 1, 2011, Dr. Basinger reported the evaluation results to Stephanie Gold, M.D., Claimant's primary physician. *See* R. 534-35.

---

[7]In this context, the acronym "FACMG" appears to stand for Fellow of the American College of Medical Genetics.

Based on a preoperative diagnosis of Hunter syndrome, James P. Miller, M.D., surgically implanted a catheter into Claimant on May 17, 2011, to facilitate and manage necessary enzyme replacement therapy. R. 395. After receiving "Elaprase enzyme infusion," Claimant was discharged the next day with a discharge diagnosis of Hunter syndrome and was scheduled for weekly elaprase treatment. R. 397, 399. Dr. Miller signed the "Operative Report" and the "Discharge Summary Report," which both state that Claimant has Hunter syndrome. *See* R. 395-98.

Given these early medical records, the Commissioner had a laboratory report of testing that documented Claimant's Hunter syndrome. If Dr. Pollard qualifies as a physician within the meaning of § 110.00E and the testing qualifies as a definitive test for Hunter syndrome, then according to § 110.00E, the Commissioner needed nothing more to find that Claimant met Listing 110.08B. Under the facts of this case, the Court should have no concern as to whether the lab report documents a definitive test of Claimant's disorder. Upon receiving the results of that lab testing, Dr. Basinger definitively diagnosed Claimant with Hunter syndrome, counseled the family as to that disorder, and referred Claimant for surgery for a catheter to facilitate treatment. In addition, POMS DI 23022.410 suggests various medical evidence of record for evaluating Hunter syndrome, including enzyme assay for iduronate sulfatase.

While an argument can be made that Dr. Pollard qualifies as a physician under § 110.00E, there is no need to make a definite determination on that issue at this time. Dr. Basinger undoubtedly qualifies as a physician and she reported that Claimant has Hunter syndrome. If the Court has any concern that Dr. Basinger's medical record and/or letter dated April 1, 2011, do not qualify as a report for purposes of § 110.00E, there should be no such concern as to the Operative and Discharge reports from Dr. Miller, who also unquestionably qualifies as a physician under § 110.00E.

For these reasons, it appears from the record before the Court that the Commissioner had the objective medical information required by § 110.00E(1) or (2) to find that Claimant's disorder meets Listing 110.08B. By definition, Listing 110.08B requires "[v]ery serious interference with development or functioning," but § 110.00E clearly states what is required for the Commissioner to determine that a disorder meets Listing 110.08B, including the interference requirement. When the administrative record contains the reports identified in § 110.00E(1) or (2), the Commissioner needs no additional information to find Listing 110.08B met. Other evidence may be relevant under § 110.00E(3), (4), and (5), but the Commissioner only needs ONE of the five listed evidentiary showings. Other evidence that may be relevant under (3), (4), and (5) does not affect whether the Commissioner has the required information under (1) or (2).

In light of the minimal evidence required under § 110.00E(1) and (2), the Court should find reversible error based on the failure of the ALJ to mention § 110.00E or to support her implicit conclusion that Claimant's disorder does not meet § 110.08B through § 110.00E. Without "some explanation from the ALJ to the contrary," it appears that Claimant would carry his burden to demonstrate that he meets the Listing requirements for § 110.08B through § 110.00E. *See Audler*, 501 F.3d at 449. Accordingly, the Court should remand this case for additional proceedings at Step 3. *See id.* On remand, Claimant or the Commissioner may seek to definitively determine any unclear matters related to § 110.00E.

Because the medical evidence of record appears to show that Claimant's disorder meets Listing 110.08B through the medical evidence required by § 110.00E, the ALJ had no need to consider whether the disorder medically or functionally equaled the listing. Nevertheless, if the Court is inclined to consider whether Claimant's disorder functionally equals Listing 110.08B, it

18

should find no substantial evidence to support the ALJ's finding. The ALJ in this case classified Claimant as an older infant as defined in 20 C.F.R. § 416.926a(g)(2)(ii) (age one to three) on the date of the second SSI application through the date of the ALJ's decision, July 25, 2014. *See* R. 15. However, that classification became inaccurate when Claimant attained the age of three on March 15, 2014. When child claimants attain the age of three they are considered preschool children. *See* 20 C.F.R. § 416.926a(g)(2)(iii). In determining whether Claimant had an impairment that functionally equaled a listing, the ALJ merely considered Claimant as an older infant. *See* R. 18-23. In the current context, ths is significant given the important role of age in determining functional equivalence. *Rose ex rel. A.D.W. v. Colvin*, No. 3:15-CV--2187-BN, 2016 WL 3031853, at *3 (N.D. Tex. May 26, 2016).

A failure to clearly consider the applicable age category may materially affect an ALJ's analysis and requires remand. *Id.* Likewise, "when, as occurred here, an ALJ fails to explicitly consider the minor claimant's maturing from one age category to another (from the time the application is filed until the hearing is held and a decision is issued), reviewing courts have found such an error requires reversal and remand." *Id.* at *4. Moreover, it is not the role of judicial review to examine the different levels of functioning expected for each age group in the six domains when the ALJ has not done so in the first instance. *Id.* Given the failure of the ALJ to account for Claimant's maturing to a preschool-aged child, the Court should find that it is unable to find that the decision to deny benefits is either supported by substantial evidence or that the Commissioner evaluated the evidence through proper legal standards. *See id.*

## IV.   CONCLUSION

For the reasons set forth in this Report and Recommendation, the Court should find that the

ALJ committed reversible error when she (1) failed to explain how she concluded that Claimant's Hunter syndrome did not meet Listing 110.08B through the requirements of § 110.00E and (2) failed to explicitly consider Claimant's maturing to preschool age on his third birthday when she considered whether his disorder functionally equaled a listing. Based on these errors, the undersigned thus **RECOMMENDS** that the district court **REVERSE** Commissioner's decision to deny benefits and **REMAND** this case for further administrative proceedings. Given Claimant's request to reopen his 2011 application, the Court should state that no court ruling in this appeal prevents him from requesting that the Commissioner reopen that application at the administrative level.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED this** 23rd **day of February, 2017.**

**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**

20